| 16 | 343 |
|-----|-----|
| 131 | 289 |

## Brandt's Appeal.

The transcript of a judgment in the Common Pleas, entered in another county, in pursuance of the act of 16th April 1840, is not a very judgment of the court of the county in which it is entered, but is a *quasi* judgment for limited purposes; it is evidence of a judgment in the court in which it was originally obtained. The original judgment having been set aside at the instance of the defendant, for irregularity, and the execution in the second county stayed, the judgment on the transcript fell with it; and the plaintiff having obtained a new judgment in the case, but no transcript of it having been entered, had no lien in the county in which the transcript had been entered.

APPEAL by Samuel Brandt and Charles Beltzhoover, from the decree of the Court of Common Pleas of *Cumberland county*, appropriating the proceeds of sale of the real estate of Michael Mishler.

The appellants claimed the amount of a judgment, Frederick Baugher for their use *vs.* Michael Mishler, obtained to No. 107, April term 1849, in the Common Pleas of *York county*, a transcript of which was filed in the Common Pleas of Cumberland county, on the 16th of April 1849, in pursuance of the act of 16th April 1840.

The facts in relation to the judgment in York are these:—Suit was brought to No. 38, November term 1848, and summons served upon Mishler, 30th September, 1848. On the 11th November, 1848, the plaintiff filed his declaration and signed judgment for default of appearance. A writ of inquiry of damages, dated 30th November 1848, was issued; and on 27th December 1848, damages were assessed at $435.20, which was duly returned by the sheriff and approved by the Court of Common Pleas on the 2d January 1849.

On the 16th April 1849, a transcript of this judgment was regularly filed and entered of record in the Court of Common Pleas of Cumberland county.

Upon this judgment a fi. fa. issued the same day to No. 2, August term 1849.

On the 25th April 1849, upon the petition of *Mishler*, the defendant, the Court of Common Pleas of York county granted a "rule to show cause why the original judgment and proceedings had on the writ of inquiry in this case should not be stricken off, because the original judgment was irregularly entered, the decla-

ration having been filed on the 11th November 1848, and judgment taken the same day—and also rule to show cause why the said judgment should not be opened and defendant let into a defence—and also why the writ of inquiry should not be set aside and the finding quashed—all proceedings to stay in the mean time —ten days' notice of this rule to be given to the assignees of the judgment."

On the 30th April 1849, on the application of Mishler, the president judge in Cumberland county endorsed on the fi. fa. No. 2, August term 1849, "I do hereby order that the proceedings on this execution in the hands of the sheriff as within mentioned be stayed until the first day of next term."

No further action was had in Cumberland county upon this order of the judge, nor were the court asked to interpose, on the first day of the succeeding term, or at any time thereafter.

On the 22d March 1850, the Court of Common Pleas of York county disposed of the rule entered as stated before, and filed the following opinion:—"In this case, the declaration having been filed after the return day of the writ, the judgment (entered for a default of appearance) and subsequent proceedings thereon were for that reason set aside, there being nothing from which the defendant's acquiescence in the irregularity could be inferred."

On the 6th of April 1850, arbitrators were chosen by the parties in York county, who reported, on the 18th June 1850, after hearing the parties in favor of the plaintiff, $483.70, with costs, being the amount for which judgment had been entered, with accumulated interest. And on the 9th July 1850, judgment absolute was entered on the award.

On the 19th July 1850, a fi. fa. No. 77, August term, was issued on the judgment in Cumberland county which had been entered on the transcript from York.

On this fi. fa. the defendant's lands were levied upon—an inquisition held upon them, of which the defendant had notice, and they were condemned.

A *venditioni exponas* issued upon this same judgment to No. 11, November term 1850, and the lands levied and condemned and sold by the sheriff, as per return *on No. 6, November term* 1850, which was also a *venditioni exponas* vs. *the same defendant*, for sale of same lands, and the only ones then in the hands of the sheriff, on which the premises were sold, producing the money in court for appropriation.

It was admitted on the argument that Michael Mishler, the defendant, was *insolvent*.

Isaac Mishler and Henry Mishler, two sons of Michael Mishler, the defendant, on the 28th November 1849, obtained an amicable judgment against their father for $4500, which was entered to November term 1849, in the Common Pleas of Cumberland county, and

on the day the argument of the rule for the appropriation of the money made by the sheriff from the sale of Mishler's property was to be heard, Samuel Brandt, one of the plaintiffs in the judgment before recited, made affidavit, which he presented to the court, for the purpose of obtaining a rule to show cause why this judgment of the two Mishlers *vs.* their father, should not be set aside on the ground of its being fraudulent. This application the court held under advisement until the hearing of the merits on the Baugher judgment for the use of Brandt and Beltzhoover before referred to.

The fund in court was more than sufficient to pay the Baugher judgment, and was claimed by Brandt and Beltzhoover, *the assignees of it*, on the lien of the transcript from York county, filed in Cumberland county 16th April 1849; and also by George Brindle and the two Mishlers on the judgment obtained on the 28th November 1849, Brindle being the assignee of a part of it.

It is provided in the act of 16th April 1840, that "In addition to the remedies now provided by law, hereafter any judgments in any district court or court of common pleas in Pennsylvania, may be transferred from the court in which they are entered, to any other district court or court of common pleas in this commonwealth, by filing of record in said other court, a certified copy of the whole record in the case; and any prothonotary receiving such certified copy of record, in any case in which judgment has been entered by another court, or in another court by transcript from justices of the peace, shall file the same, and forthwith transcribe the docket entry thereof into his own docket, &c. And as to lien, revivals, executions, and so forth, it shall have the same force and effect, and no other, as if the judgment had been entered, or the transcript been originally filed in the same court to which it may thus be transferred." *Purdon's Dig.* 662.

WATTS, J., decided that when the original judgment in York county was set aside by the Court of Common Pleas of that county, it had the effect of setting aside the lien of the transcript: 7 *Watts* 540, Hastings *v.* Lolough. That if this be the case, it was not necessary to entertain the inquiry attempted to be raised as to the judgment of Isaac and Henry Mishler, "as it can be of no consequence to any one but a lien creditor, whether the judgment is fraudulent or not: it is certainly good as to the parties to it." He decreed *that* judgment to be paid.

It was assigned for error:

1. The court erred in refusing the issue prayed for to test the fairness of the judgment of the Mishlers.

2. The court erred in decreeing the money to the judgment of the Mishlers, instead of to the appellants.

*Hepburn* and *Graham*, for appellants.

The court declined to hear *Biddle*, for appellees.

The opinion of the court was delivered June 18, by

GIBSON, C. J.—Is the transcript of a judgment itself a judgment, or a dependent emanation from one? By the act of 1840, a judgment of a county court may be transferred to the court of any other county by filing a certified copy of the whole record—not a transcript of the judgment merely—and it is provided that it shall have, " as to lien, revival, execution, and so forth, the same force and effect *as if* the judgment had been entered in the same court to which it may thus be transferred." It is not then a very judgment of that court, but a *quasi* judgment, and that too only for limited purposes. Of what court, then, is it *evidence* of a judgment? Certainly the court from which it came. It will not be pretended that the record filed to support it is a record of any other. An exemplification of it as evidence elsewhere could be made only by that court. That the original is not removed by the transcript is shown by the provision that the lien of the judgment in the proper county shall not be impaired by transmission of the certified copy. The judgment in this case, therefore, was a judgment exclusively of the Common Pleas of York county, and the regularity or merits of it could not be overhauled elsewhere, further than to stay execution on it, which was done. Had the defendant moved the Common Pleas of Cumberland to set it aside, he would have been told that the power of that court was restricted to the enforcement of it. He properly went to the fountain head, had the irregular judgment set aside in York county, and execution stayed in Cumberland. The judgment was set aside because it had been surreptitiously obtained; and the rule in Drury's case, 8 *Rep.* 142, is that, as to things executory, a judgment annulled is as if it had never been; and nothing is more executory than an unexecuted writ. If there never had been a judgment in York county, the court in Cumberland might have struck the transcript from its record even when the money was brought in for distribution; and it virtually did so by disregarding it. There may be a judgment on a mortgage and a judgment on a bond for the same debt, but a legal mind cannot conceive of two independent judgments of the very same kind, each binding the person, and each for the same thing; to avoid the absurdity of which, the law allows the pendency of a prior action to be pleaded in abatement, or a former recovery to be pleaded in bar. The object of the legislature was not to create a new lien, but to enlarge the field of an old one and enforce it by local authority; to which end the transcript was endued, as a graft, with no greater measure of life than that of the parent stock. If it were independent and self-sustained, it would not be

[Brandt's Appeal.]

discharged by payment of the original, and the plaintiff would be bound to make more than one entry of satisfaction. After this irregular judgment had been succeeded by a regular one, the plaintiff ought to have filed a new transcript, instead of relying on an exploded one. He insists that it is still at least a judgment *de facto*, and that a creditor cannot take advantage of an irregularity in it. But the defendant himself took advantage of it, abated the original in the proper forum, and its accessories followed it. He procured an order from the court in Cumberland to stay an execution which had been sued out in the mean time; and what more could he do to warn the plaintiff that he did not mean to acquiesce. The plaintiff neglected to file a new one, and his lien is gone.

Decree affirmed.